UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ADRIAN D. WARE, et al.                                                      PLAINTIFFS

v.                                              CIVIL ACTION NO. 3:13cv387-DPJ-FKB

U.S. BANK NATIONAL ASSOCIATION,
as Trustee, purported Successor in Interest to
Bank of America, National Association, as purported
Successor by Merger to LaSalle Bank, National
Association, as purported Trustee for Washington
Mutual Mortgage Pass-Through Certificates
WMALT Series 2006-5, et al.                                                 DEFENDANTS

ORDER

This case is before the Court on the Motion for Summary Judgment [86] filed by

Defendant JP Morgan Chase Bank, N.A. ("Chase").  Finding no genuine issue of material fact,

the Court grants Chase's motion.

I.       Facts and Procedural History

Plaintiffs Adrian and Tonya Ware purchased a home in the Bridgewater neighborhood of

Ridgeland, Mississippi, in December 2004.  Plaintiffs financed the purchase by executing two

promissory notes and deeds of trust in favor of Metrocities Mortgage, LLC.  Plaintiffs' mortgage

loans were refinanced several times, and Plaintiffs ultimately paid off one of their loans by

February 2012.

As to the remaining loan, in 2011, Plaintiffs began experiencing financial difficulty, so

Mr. Ware called a federal agency to inquire into the Home Affordable Modification Program

(HAMP).  Mr. Ware learned that his loan would not qualify for a HAMP modification because

the principal amount of the loan was too high but that Chase, the loan servicer, "had a program

that mirrored HAMP."  A. Ware Dep. [86-9] at 69.

Mr. Ware then contacted Chase and submitted an application for a loan modification. After submitting the application, Mr. Ware called Chase to check on its status on more than one occasion. During the second such phone conversation, a Chase representative told Mr. Ware that "loans that are current are not . . . reviewed" but "only loans that are delinquent are reviewed." *Id.* at 92. Other Chase representatives, in other phone calls with Mr. Ware, confirmed "that in order for the loan to be reviewed, that it has to be, you know, delinquent." *Id.* at 95. The Wares thereafter stopped making payments on their loan.

In the meantime, the Wares submitted four loan modification requests to Chase, each of which was denied without explanation. Mr. Ware testified that throughout this time, he "would write [Chase] and ask them things and would not get a lot of responses to my questions . . . ." A. Ware Dep. [89-1] at 97. Mr. Ware also recalls that "at one time [he] was told that [his] time expired on getting something . . . back to [Chase], which [he] didn't think was true, because [he] thought [he] was pretty prompt with responding" to Chase's requests for information. *Id.* at 105.

Eventually, the Wares began receiving letters indicating that their loan was being foreclosed upon, but Chase representatives told Mr. Ware that his "loan modification was being processed, and they didn't know why [he] was getting letters." *Id.* at 112.

In April 2012, the beneficiary of the Wares' deed of trust assigned it to U.S. Bank, which appointed a substitute trustee. On May 22, 2013, the substitute trustee issued a notice of sale, setting a foreclosure sale for June 20, 2013. The Wares filed this lawsuit in Madison County Circuit Court on June 12, 2013, and Chase removed it to this Court. Following the Court's ruling on a Motion to Dismiss [8], the Wares' sole remaining claims are for negligence and gross negligence against Chase. *See* Dec. 20, 2013 Order [19]; Apr. 15, 2014 Order [48].

At the close of discovery, Chase filed its Motion for Summary Judgment [86].  After briefing concluded, the Court held oral argument and then gave the parties an extended period to pursue a settlement.  When that failed, the Court requested additional briefing, which was completed August 27, 2015.  Personal and subject-matter jurisdiction exist and the Court is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

3

III.    Analysis

Chase makes three primary arguments in support of its motion.  First, it asserts that the Wares are judicially estopped from pursuing their claims because they did not disclose them in their bankruptcy case.  Second, Chase claims the Wares cannot establish that it breached any duty it owed them.  Finally, Chase argues that the Wares' claims fail for lack of proof of any damages. The Court will examine the first two.

A.    Judicial Estoppel

On September 26, 2012, the Wares filed a Chapter 13 Bankruptcy Petition, and they filed their schedules on October 25, 2012.  Those schedules failed to mention their potential claims against Chase.  But on February 25, 2013, the bankruptcy court entered an Agreed Order Granting Trustee's Motion to Dismiss [86-15], and the bankruptcy case was closed without the court confirming the Wares' Chapter 13 plan.

Chase maintains that the Wares are judicially estopped from pursuing their claims for failure to include them as an asset in their bankruptcy schedules.  "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation."  *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004).  The Fifth Circuit applies a three-part test to determine the applicability of the doctrine:  "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent."  *Id.* at 335.

The Wares concede that the first and third requirements are satisfied, so the sole dispute centers on whether the bankruptcy court accepted the Wares' previous position that they did not have, as an asset, the potential claims they now assert in this lawsuit.  "The second requirement

4

for the application of judicial estoppel, judicial acceptance, ensures that judicial estoppel is only applied in situations where the integrity of the judiciary is jeopardized." *In re Oparaji*, 698 F.3d 231, 237 (5th Cir. 2012) (citation omitted).

According to Chase, the bankruptcy court accepted the Wares' previous position when it "accepted Plaintiffs['] schedules and their proposed Chapter 13 plan." Def.'s Mem. [87] at 13. Chase then relies on a state-court opinion from New York to assert that the bankruptcy court's ultimate entry of an agreed order of dismissal "inferentially endorsed plaintiff's then position concerning its assets." *Id.* (quoting *Manhattan Ave. Dev. Corp. v. Meit*, 224 A.D.2d 191, 192 (N.Y. App. Div. 1996)). But the Fifth Circuit has held that a bankruptcy court's acceptance of a debtor's schedules and bankruptcy plan is negated when the bankruptcy court later "dismisse[s] [the d]ebtor's bankruptcy plan without granting a discharge." *In re Oparaji*, 698 F.3d at 238. That is precisely what happened in this case, so judicial estoppel does not apply.

B.      Breach of Duty of Care

As the servicer of the Wares' loan, Chase owed the Wares a duty to act reasonably in its dealings with them. *See Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 649  50 (S.D. Miss. 2013). The Wares claim Chase breached that duty in two general ways. First, as stated in their Complaint, the Wares contend that Chase's employee advised them "to stop paying the subject mortgage in order to qualify for a modification." Compl. [1-1] ¶ 46. Second, the Wares now argue that Chase's "processes for communicating with the Plaintiffs who sought modifications and for acting on their applications is so defective that it constitutes negligence/gross negligence." Pls.' Mem. [89] at 11. Chase contends that the Wares' first theory

was abandoned and is otherwise deficient and that the second is procedurally barred.   The Court
addresses both in turn.

1.      Negligence / Gross Negligence Related to Representations

The Wares pleaded their claims related to the alleged advice to stop making payments as
negligence and/or gross negligence claims.   There is no negligent-misrepresentation claim before
the Court related to that conduct.   But had the Wares pleaded that claim under the negligent-
misrepresentation theory, then it would be indistinguishable from the claims dismissed in *Chavez
v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 347 (5th Cir. 2014) and *Pennell v. Wells Fargo
Bank, N.A.*, 507 F. App'x 335, 336 37 (5th Cir. 2013).

In those cases, the Fifth Circuit affirmed dismissal of negligent-misrepresentation claims
where the plaintiffs were told to stop making payments in order to refinance a home mortgage,
finding that the representations were promises of future performance.   *Chavez*, 578 F. App'x at
347 (applying analogous Texas law); *Pennell*, 507 F. App'x at 336 37 (applying Mississippi
law).   This Court therefore requested additional briefing on whether a plaintiff can avoid
dismissal of a defective claim by pleading it under a different    and in this case less
specific    legal theory.

Having carefully considered the parties' submissions, the Court concludes that the Wares
cannot avoid summary judgment of a claim based on a negligent misrepresentation by simply
labeling it as a negligence or gross negligence claim, because "[i]t is the substance of the claim
and not the language used in stating it which controls."   *Gaudet v. United States*, 517 F.2d 1034,
1035 (5th Cir. 1975); *see also Am. Bankers Ins. Co. of Fla. v. Booth*, 830 So. 2d 1205, 1214 ("A
court must look to the content of the pleading to determine the nature of the action. Substance is

considered over form. . . .  The label is not controlling.") (Internal quotation marks and citation omitted).

The United States Supreme Court faced a similar issue under the Federal Tort Claims Act, which bars "[a]ny claim arising out of . . . misrepresentation."  28 U.S.C. § 2680(h).  In *United States v. Neustadt*, the plaintiff attempted to avoid this bar by asserting that the government had been negligent when it gathered inaccurate information that was passed to the plaintiff and caused injury.  366 U.S. 696, 706 (1961).  Looking to the common-law antecedents to Section 2680(h), the Court rejected the claim, holding as follows:

> To say . . . that a claim arises out of "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, i.e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation" . . . .

*Id.*

The same is true here.  The Wares take issue with Chase's alleged representation that they should stop making payments.  Had the Wares pleaded a negligent-misrepresentation claim, it would have failed for the reasons stated in *Chavez*.  578 F. App'x at 347.  They cannot avoid that result by simply giving the claim a different label.  In other words, a claim based on a negligent misrepresentation must satisfy the elements of a negligent-misrepresentation claim.  This claim is therefore dismissed with prejudice.

### 2.     Negligent Processes for Communicating

In response to Chase's summary-judgment motion, the Wares attempted to modify the negligence claim reflected in their Complaint and faulted Chase's "processes for communicating

7

with the Plaintiffs . . . ."  Pls.' Mem. [89] at 11.  This theory is based on the Wares' communications with Chase *after* the alleged advice to stop making payments.  They generally contend that during the application process, Chase gave them conflicting information about the status of their application and what they needed to do.  Chase challenges this argument as an ineffective amendment to the Complaint.[1]

As a general rule, "[a] claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).  This rule is rooted in the need to provide adequate notice.  As stated in *De Franceschi v. BAC Home Loans Servicing, L.P.*, "[a] properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'"  477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698  99 (2009)).  "Accordingly, district courts do not abuse their discretion when they disregard claims *or theories of liability* not present in the complaint and raised first in a motion opposing summary judgment."  *Id.* (emphasis added).  This rule also encompasses new factual theories supporting previously pleaded legal theories.  *See, e.g.*, *id.*; *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory); *Benavides v. EMC Mortg. Corp.*, Civil Action No. 3-12-46, 2013 WL 416195, at *4 (S.D. Tex. Jan. 31, 2013) (Costa, J.) (refusing to consider new factual theory supporting previously pleaded legal cause of action).

---

[1]At least some of these claims would also suffer from the same deficiencies addressed in *Pennell*, but as stated next, the claim is not before the Court.

But another judge in this district has found that "new facts supporting . . . claims do not constitute unpleaded claims or an attempted amendment.  They are the same claims, albeit supported by additional facts."  *Wells v. Healthcare Fin. Servs., LLC*, No. 2:13cv256-KS-MTP, 2014 WL 5339377, at *3 (S.D. Miss. Oct. 20, 2014), *opinion withdrawn on reconsideration on other grounds*, 2014 WL 6494276 (S.D. Miss. Nov. 19, 2014) (citation omitted).

Assuming *Wells* is correct, the initial question is whether the Wares are simply offering new facts supporting a previously pleaded theory or a new theory.  Looking to the Wares' Complaint, they describe the negligence/gross-negligence claim as follows:  "Chase . . . [is] guilty of negligence and/or gross negligence in doing and/or omitting to do the acts set forth in this Complaint, *including* the instructions by a representative of Chase . . . to stop paying."  Compl. [1-1] ¶ 46 (emphasis added).

This statement hints at conduct other than the alleged advice to stop paying, but only that claim is reflected in the supporting facts.  The Wares confirmed as much in response to the original motion to dismiss when they stated: "The general allegations of negligence therein refer to the representations made by Chase to the Plaintiffs that they should stop paying their mortgage payments if they wanted to discuss a modification or refinance of the loan . . . ."  Pls.' Mem. [13] at 6.  They did not, at that time, reference a "process-for-communicating" theory.  Moreover, that theory is premised on events occurring *after* the advice to stop paying and constitutes a new and distinct claim for which Chase has received no notice.  *See De Franceschi*, 477 F. App'x at 204 (citing *Iqbal*, 556 U.S. at 698  99).

This, however, does not end the inquiry, because the Court will construe the summary-judgment response as a motion to amend.  There are two lines of cases within the Fifth Circuit on

this point.  *Compare Cutrera*, 429 F.3d at 113 (affirming dismissal and holding that "[a] claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court") *with Debowale v. U.S. Inc.*, 62 F.3d 395, 1995 WL 450199, at *1 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] Bivens claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under Fed. R. Civ. P. 15(a) and granted it") (citations omitted).[2]

Assuming the response should be converted to a motion to amend, the Court must consider whether such a motion should be granted.  *See Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) ("We take no position as to whether leave to amend should be granted    the district court may decide, on remand, that leave to amend would be futile or otherwise inappropriate.").

"Rule 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (citation omitted).  Here, the deadline to amend passed on October 28, 2013, so Rule 16(b)(4) applies. *See* Sept. 27, 2013 Order [11] at 4.  Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent."  More particularly, the movant must "demonstrate that

---

[2]In *Pierce v. Hearne Independent School District*, the Fifth Circuit repeated that "[g]enerally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted."  600 F. App'x 194, 200 (5th Cir. 2015).  But the court also observed that "[n]ew factual allegations, however, need not be so construed unless the plaintiff explicitly requests leave to amend and expresses the grounds upon which the amendment is sought with particularity."  *Id.* at n.6.  *Pierce* arose in the Rule 12(b)(6) context.  *Id.*

he could not reasonably have met this deadline despite exercising diligence." *Squyres*, 782 F.3d at 237 (citation omitted).

The Wares cannot meet that standard. Their summary-judgment response was filed one year after the amendment deadline expired, and there is no indication that the claim could not have been raised with due diligence   it is premised on facts the Wares have known since the day they occurred. Moreover, there would be prejudice in this case because Chase has already moved for summary judgment and the issues have been fully briefed, argued, and in some respects re-briefed. *See Hatch v. Del Valle Indep. Sch. Dist.*, 496 F. App'x 417, 421 (5th Cir. 2012) (holding that the "district court did not abuse its discretion by declining to allow Hatch to amend his complaint . . . after DVISD filed its motion for summary judgment") (citing *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (finding no abuse of discretion in denying motion to amend filed after defendant moved for summary judgment)). Given this combination of facts, the Court concludes that leave to amend should not be extended at this late date.[3]

---

[3]Though not addressed by the parties, the Court feels it should point out that some of the "process" facts were included in a proposed amended complaint. In the initial dismissal order, the Court gave the Wares an opportunity to file a delinquent motion to amend to fix a few specific deficiencies. *See* Dec. 12, 2013 Order [19]. The Wares filed a motion and attached a proposed amended complaint. *See* Pls.' Mot. [23]. They explained that the amendment would "clarify the *existing* pleadings . . . ." *Id*. at 2. And, of course, they had just represented to the Court that the negligence claim was based on the stop-payment advice. Pls.' Mem. [13] at 6. It was not apparent then that the Wares were attempting to add a new theory of liability, and they never addressed any such request in their motion. *See generally id*. Chase then opposed the amendment because the Wares included dismissed claims and generally failed to fix the few items they were granted leave to address. *See generally* Def.'s Mem. [26]. The Wares filed no reply, and the Court denied the motion for a host of reasons. April 15, 2014 Order [48]. The Wares never filed a motion to alter or amend, and never again mentioned their 'process' issues until the summary-judgment response. To be clear, the Court had not granted the Wares leave to file an out-of-time motion to amend in order to add new claims, and they did not indicate that

IV.     Conclusion

The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Chase's Motion for Summary Judgment [86] is granted.

Finally, the Court notes that Plaintiffs' claims against all Defendants, with the exception of the United States and Metrocities Mortgage, LLC, have now been dismissed.  The docket does not reflect that the Wares served the United States or Metrocities Mortgage since the filing of the Complaint on June 12, 2013, and the 120-day window to do so has long passed.  If the Wares did serve these Defendants prior to removal, neither has made an appearance in this action, and the Wares have not pursued default.  Moreover, in its Notice of Removal, Chase asserted that the United States had been improperly joined as a party.

Accordingly, the Court concludes that the Wares have likely abandoned their claims against the United States and Metrocities Mortgage, LLC.  If the Wares disagree, they must show cause within five (5) days of this Order why the claims against these Defendants should not be dismissed.  Failure to respond will result in dismissal of this action in its entirety.

**SO ORDERED AND ADJUDGED** this the 17th day of September, 2015.

s/ *Daniel P. Jordan III*

UNITED STATES DISTRICT JUDGE

---

such was their intent.  Had such an amendment been more specifically requested, it would have been unauthorized by the Court's prior order and otherwise out of time.  Finally, Chase had no notice that the "process" claim was ever part of the case.